UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

SCOTT H. LANSING                           CIVIL NO. 15-3530 (MJD/JSM)

      Plaintiff,

v.                                         REPORT AND RECOMMENDATION

WELLS FARGO BANK, N.A.,

      Defendant.

JANIE S. MAYERON, United States Magistrate Judge

      The above matter came before the Court upon Defendant's Motion for Judgment on the Pleadings [Docket No. 9] and plaintiff's Motion to Amend Complaint [Docket No. 29].[1]  Plaintiff appeared pro se.   Ellen B. Silverman, Esq. appeared on behalf of defendant Wells Fargo Bank, N.A.  Defendant's Motion for Judgment on the Pleadings has been referred to the undersigned United States Magistrate Judge for a Report and Recommendation pursuant to 28 U.S.C. § 636 and Local Rule 72.1.

## I.    FACTUAL BACKGROUND

      This suit arises out of a foreclosure and sheriff's sale of plaintiff Scott H. Lansing's residence located at XXXX Mayflower Circle, Minnetonka, Minnesota 55305 ("Property").

      On August 25, 2004, Lansing executed and delivered a note to World Savings Bank, FSB ("WSB") in the principal amount of $203,500 ("Note").  Wells Fargo's Answer and Counterclaim to Plaintiff's Complaint, Ex. B (Note dated August 25, 2004) [Docket

---

[1]    As plaintiff's Motion to Amend Complaint is inextricably tied into defendant's Motion for Judgment on the Pleadings, this Court includes in this Report and Recommendation its decision on plaintiff's motion to amend.

No. 4].[2]  To secure payment on the Note, Lansing executed and delivered to WSB a Mortgage dated August 25, 2004, which was filed with the Hennepin County Recorder on April 15, 2005 ("Mortgage").  Counterclaim, Ex. C (Mortgage dated Aug. 25, 2004); Notice of Removal, Ex. A (Summons and Complaint) ("Complaint"), ¶ 4 [Docket No. 1]. On December 31, 2007, WSB changed its name to Wachovia Mortgage, FSB, and on November 1, 2009, Wachovia Mortgage, FSB merged into Wells Fargo Bank, N.A. ("Wells Fargo").  Answer, ¶ 5.  Consequently, Wells Fargo held a mortgage interest in the Property prior to its foreclosure. Complaint, ¶ 5; Answer, ¶ 5.

On November 15, 2009, Lansing defaulted under the terms of the Note and Mortgage by failing to make monthly payments as of that date.  Counterclaim, ¶ 3. Wells Fargo commenced a foreclosure by advertisement proceeding on the Property, which resulted in a sheriff's sale on August 30, 2011.  Id., ¶ 4.

On October 4, 2011, Lansing sued Wells Fargo in Hennepin County District Court for failing to strictly comply with Minnesota foreclosure statutes ("2011 Foreclosure Action").  Id., ¶ 4; Ex. F (Lansing's Complaint in Hennepin County District Court dated Oct. 4, 2011).  The case was subsequently removed to federal court.  Id., ¶ 4.  On April 8, 2013, the parties held a settlement conference and reached a settlement agreement on the record before then Chief United States Magistrate Judge Arthur Boylan.  Id., ¶ 5.  Lansing was represented by attorney Jonathan Drewes.  Id., Ex. G (Transcript of April 8, 2013 Hearing in Lansing v. Wells Fargo Bank, N.A., Civil No. 11-

---

[2]    The paragraphs of Wells Fargo's Answer, paragraphs 1-35, track the paragraphs of Lansing's Complaint.  For its Counterclaim, Wells Fargo numbered the paragraphs 1-17.  Thus, to the extent that this Court references statements made by Wells Fargo in or exhibits attached to its Answer, the Court will cite "Answer."  To the extent that that this Court references statements made by Wells Fargo in or exhibits attached to its Counterclaim, the Court will cite "Counterclaim."

3132 (DSD/AJB)).  Wells Fargo was represented by attorney Erin Hoffman.  Id.  The

hearing on the settlement agreement proceeded as follows:

> THE COURT:        Good afternoon to all that's before the
> Court.
>
> After some lengthy and detailed negotiations, it's my
> understanding that his matter has been settled.  Who wants
> to place the agreement on the record?
>
> MS. HOFFMAN:     I will do so, Your Honor.  Perhaps Mr.
> Drewes could correct me if I miss anything.
>
> The parties agree that in exchange for a dismissal of all Mr.
> Lansing's claims in the complaint by stipulation the parties
> will rescind the current foreclosure sale; discharge a notice
> of lis pendens that's currently before, also recorded;
> reinstate the previously existing mortgage allowing Wells
> Fargo to proceed with re-foreclosure.
>
> Mr. Lansing will cooperate with that re-foreclosure process,
> but nothing in the agreement will prevent him from doing a
> borrower postponement affidavit.  He will waive the right to
> challenge any deficiencies in the future foreclosure, and he
> will vacate the property at the expiration of the redemption
> period, also releasing any claims against Wells Fargo for any
> future eviction that it might have to do notwithstanding the
> fact that he has agreed to vacate the property at the
> expiration of the redemption period.    And this is a
> confidential settlement as well, Your Honor.
>
> THE COURT:        Mr. Drewes, is this your understanding
> of the agreement?
>
> MR. DREWES:     I also understand, Your Honor, that
> attorney fees related to this case will not be charged on as
> part of the reinstatement amount or redemption amount in
> the foreclosure, . . . .
>
> MS. HOFFMAN:     Yes, Your Honor.  I apologize.  I did
> forget the attorney fees provision. . . . And we would like to
> also memorialize this same agreement in a written
> agreement, just so that we can have that on the record as
> well.
>
> THE COURT:        Well, I think a written agreement is
> appropriate.  I'm going to order that once that's been drafted
> if there's any disagreements between counsel as to the

3

wording of the same that you supply me with a red-line version.   I'll choose either the plaintiff's version of the disputed language, the defense version of the disputed language or look at my notes and the record and draft up my own language.   But that decision for scrivening purposes would be final and unappealable.   Is that agreeable to the plaintiff?

MR. DREWES:        It is, Your Honor.

THE COURT:        To the defendant?

MS. HOFFMAN:        It is, Your Honor.

THE COURT:        Mr. Lansing, can I have you take the podium for one moment, please.   Mr. Lansing, you've been seated here and you've what was said; am I correct?

MR. LANSING:        Yes.

THE COURT:        Did you hear everything?

MR. LANSING:        Yes.

THE COURT:        Did you understand everything?

MR. LANSING:        Yes.

THE COURT:        Is this agreeable to you?

MR. LANSING:        Yes.

THE COURT:        You understand this is a final and fully enforceable settlement even in the absence of signatures?

MR. LANSING:        Yes.

THE COURT:        Okay.   Very good.

Can I have the gentleman from Wells Fargo come to the podium, please.

MR. KRAUSS:        Justin Krauss, Your Honor.

THE COURT:        And Mr. Krauss, what's your position with the defendant?

MR. KRAUSS:        In-house counsel for Wells Fargo Bank, N.A.

THE COURT:        As such are you authorized to act on behalf of the defendant?

| | |
|---|---|
| MR. KRAUSS: | Yes, Your Honor. |
| THE COURT: | Is this agreeable to the defendant? |
| MR. KRAUSS: | Yes, Your Honor. |
| THE COURT: | Do you understand this is a final and enforceable agreement even in the absence of signatures? |
| MR. KRAUSS: | Yes, Your Honor. |
| THE COURT: | Very good. |

Id., pp. 2-6.

On April 19, 2013, the District Court, having been advised that the matter had been settled, entered an Order dismissing the case.  April 19, 2013 Order in 2011 Foreclosure Action [Docket No. 34].

In April, 2013, counsel for Lansing and Wells Fargo exchanged drafts of a written memorialization of the April 8, 2013 settlement agreement.  Affidavit of Scott Lansing ("Lansing Aff."), Ex. 17 (Draft of Memorialization of Settlement Agreement by Jonathan Drewes); Ex. 20 (April 30, 2013 email from Erin Hoffman to Jonathan Drewes and Michael Wang with attachment) [Docket No. 26].  No final written memorialization of the settlement agreement was signed by the parties.

On June 14, 2013, Wells Fargo commenced a foreclosure by judicial action on the Property by filing a Complaint in the Hennepin County District Court ("2013 Foreclosure Action").  Counterclaim, ¶ 7; Ex. H (Complaint dated June 14, 2013 in 2013 Foreclosure Action).  Lansing filed an Answer in the 2013 Foreclosure Action on August 2, 2013, which was signed by attorneys Jonathan Drewes and Michael Wang.  Id., ¶ 8; Ex. I (Answer dated August 2, 2013 in 2013 Foreclosure Action).  On January 3, 2014, Wells Fargo moved for summary judgment on its claims.  Id., ¶ 9.  On January 24, 2014, Lansing wrote a letter to the Hennepin County District Court, Judge Philip Bush, stating

5

that Jonathan Drewes had withdrawn from the case on January 10, 2014, requesting that Drewes not be permitted to represent him in the case, and further requesting that Judge Bush hold a hearing with Drewes, Wells Fargo and Lansing to address issues raised by Lansing in the letter.  Id., ¶ 10; Ex. K (letter dated January 24, 2014 from Lansing to Judge Bush).[3]

On January 31, 2014, the Hennepin County District Court held a hearing on Wells Fargo's summary judgment motion, at which Lansing appeared pro se.  Id., ¶ 11; Ex. L, pp. 7-15 (Transcript of January 31, 2014 hearing in 2013 Foreclosure Action). The court granted Wells Fargo's motion for summary judgment on March 20, 2014, having found that Lansing had defaulted on the terms of the Note and Mortgage by failing to make monthly payments since November 15, 2009.  Id., Ex. L, pp. 2-6 (Order dated March 20, 2014 in 2013 Foreclosure Action).  Accordingly, the Hennepin County District Court entered judgment against Lansing and awarded Wells Fargo a decree of foreclosure on the Property.  Id.

On September 10, 2014, Wells Fargo purchased the Property at a sheriff's sale for $286,215.  Complaint, ¶ 6; Answer, ¶¶ 2, 6; Ex. A (Sheriff's Report of Sale dated September 10, 2014).

---

[3]    In the letter, Lansing represented that Drewes had assured him that "all of [his] rights to contest the next foreclosure action by Wells Fargo would remain intact except that [he] could not raise technical violations of the Minnesota Foreclosure statute." Counterclaim, Ex. K (letter dated January 24, 2014 from Lansing to Judge Bush). Lansing further stated that on April 9, 2013, Drewes had informed him that under the terms of the settlement agreement, he could not bring suit against Wells Fargo based on violations of Minnesota foreclosure statutes, but there was nothing prohibiting bankruptcy, postponement of the sheriff's sale under Minn. Stat. § 580.07, or collateral lawsuits challenging the validity of the Mortgage.  Id.  Lansing also indicated that, in response to interrogatories and document requests sent by Lansing to Wells Fargo, Wells Fargo refused to provide anything and had stated that Lansing could not contest the foreclosure action.  Id.

Lansing appealed the judgment of the Hennepin County District Court to the Minnesota Court of Appeals.  Counterclaim, ¶ 12.  In his appeal, Lansing argued for the first time that Minn. Stat. § 582.043 required Wells Fargo to stop foreclosure proceedings against the Property because he had submitted a loss-mitigation application to Wells Fargo, which Wells Fargo had received on November 21, 2013.  Id., Ex. M, pp. 5-6 (February 9, 2015 Order of Minnesota Court of Appeals, Case No. A14-0868).  On February 9, 2015, the Minnesota Court of Appeals issued an order affirming the judgment of the district court.  Id.  The appellate court noted that Lansing had failed to raise his Minn. Stat. § 582.043 claim in the district court, but nonetheless proceeded to address the merits of this claim.  Id., pp. 5-6.  The court found that even though Minn. Stat. § 582.043 required a loan servicer to halt foreclosure proceedings while a borrower's application for a loan modification was being processed, there was no evidence in the record showing that Lansing had ever completed or submitted a loss-mitigation application to Wells Fargo.  Id., p. 6.

## A.    Lansing's Complaint

Lansing commenced the instant suit by filing a Complaint in Hennepin County District Court.  On September 4, 2015, Wells Fargo removed the case to this Court. Notice of Removal, Ex. A (Summons and Complaint), pp. 1-3.

In his Complaint, Lansing alleged that he is an individual owner and occupant of the Property.  Complaint, ¶ 2.  Wells Fargo attempted to foreclose on the Property, resulting in a sheriff's sale on September 10, 2014.  Id., ¶ 6.  Beginning in July, 2013, Wells Fargo began making daily calls to Lansing regarding commencement of the loan modification process.  Id., ¶ 10.   On November 21, 2013, Lansing faxed loan

modification documents to Wells Fargo. Id., ¶¶ 11, 29.   Upon receipt of the loan modification documents on November 21, 2013, Wells Fargo ceased making daily calls to Lansing. Id., ¶ 12.

On November 22, 2013, Lansing's attorney, Drewes, notified Wells Fargo's counsel David Mortensen that Lansing and Wells Fargo were corresponding to modify the Mortgage. Id., ¶¶ 13, 30.   Later that day, Drewes emailed Mortensen and stated, "I don't think you can proceed with the motion for a foreclosure order while [Lansing's] application is being reviewed." Id., ¶ 14.   Mortensen responded:

> Thanks for your message.  I've spoken with my client, and I'm unaware of any remaining loss mitigation discussions.  I will check again, and will address if necessary.   After considering the issues in this case, I'm not agreeable to put discovery on hold at this point, but I am going to rescheduling [sic] the summary judgement [sic] hearing to the end of January.

Id., ¶¶ 15, 31.

After receiving Lansing's loan modification documents on November 21, 2013, Wells Fargo never contacted Lansing regarding a determination of whether he was eligible for loss mitigation. Id., ¶ 17.   Wells Fargo proceeded to seek a judgment of foreclosure on the Property. Id., ¶ 18.

Lansing alleged that Mortensen filed a false affidavit dated January 3, 2014, which stated, "I am also unaware of any loss mitigation efforts currently underway between our client and defendant." Id., ¶ 31.   Wells Fargo proceeded with a sheriff's sale of the Property in September, 2014, notwithstanding its knowledge that Mortensen's affidavit was false under Minnesota law. Id., ¶¶ 32, 33.   Consequently, Wells Fargo knew or should have known that it failed to conduct a valid foreclosure on the Property. Id., ¶ 34.

Lansing asserted three causes of action against Wells Fargo.  First, Lansing brought a claim under Minn. Stat. § 582.043, subd. 7, alleging that Wells Fargo had failed to strictly comply with Minnesota statutes in foreclosing on the Property.  Id., ¶¶ 8-22.  Second, Lansing asserted a quiet title claim under Minn. Stat. § 599.01, and third, he asserted a claim for slander of title under Minnesota common law.  Id., ¶¶ 23-35.  For relief, Lansing sought damages, attorney's fees, a declaration that the sheriff's sale conducted on September 10, 2014 was null and void, and a judgment quieting title to the Property in Lansing's name.  Id., p. 7.

### B.  Wells Fargo's Answer and Counterclaim

Wells Fargo filed its answer to Lansing's Complaint and affirmatively stated that, beginning in July, 2013, Wells Fargo telephoned Lansing several times a week to determine whether he could make payments on his delinquent loan prior to scheduling a sheriff's sale on the Property.  Answer, ¶ 10.  Each time the parties spoke, Lansing refused to commit to making any payments on his mortgage loan.  Id.  On July 13, July 20 and July 22, 2013, Lansing notified Wells Fargo that he planned to apply for a loan modification and would "call back" when he was ready to do so.  Id.  However, Lansing never called Wells Fargo to initiate the loan modification process at any time during 2013.  Id., ¶ 10.  Further, Wells Fargo never received a complete loan modification application or any "loan modification documents" from Lansing in November, 2013.  Id., ¶¶ 11, 17, 18, 29.  Wells Fargo foreclosed on the Property by judicial action, and on September 10, 2014, it purchased the Property at a sheriff's sale for $286,215.  Id., ¶¶ 2, 6, 18, 33.  Wells Fargo admitted that Mortensen filed an affidavit with the Court dated January 3, 2014, but it denied that the affidavit was false.  Id., ¶ 31.

Wells Fargo brought a counterclaim against Lansing for breach of contract. According to Wells Fargo, Lansing defaulted under the terms of the Note and Mortgage by failing to make monthly payments since November 15, 2009. Counterclaim, ¶ 3. In 2011, Wells Fargo began a foreclosure by advertisement proceeding on the Property, which resulted in a sheriff's sale on August 30, 2011. Id., ¶ 4. Following the foreclosure, Lansing sued Wells Fargo for failing to strictly comply with Minnesota foreclosure statutes. Id. The case was removed to federal court. Id.

The parties were ordered into mediation and reached a settlement agreement on the record before then Chief Magistrate Judge Arthur Boylan. Id., ¶ 5. Lansing agreed to dismiss his claims against Wells Fargo in exchange for Wells Fargo's agreement to rescind the foreclosure sale so that Wells Fargo could re-foreclose on the Property. Id., ¶ 6. Lansing waived the right to challenge any deficiencies in the future foreclosure and agreed to vacate the Property at the end of the future redemption period. Id. Lansing understood that the settlement was final and fully enforceable even in the absence of signatures. Id.

In July, 2013, Wells Fargo initiated a foreclosure by judicial action against the Property. Id., ¶ 7. Lansing filed an answer to Wells Fargo's complaint. Id., ¶ 8. On January 3, 2014, Wells Fargo moved for summary judgment, and the district court granted the motion on March 20, 2014. Id., ¶¶ 9, 11. Lansing appealed the decision of the district court, and on February 9, 2015, the Minnesota Court of Appeals affirmed. Id., ¶ 12.

According to Wells Fargo, the settlement agreement from the 2011 Foreclosure Action was a binding contract between the parties. Id., ¶ 14. Wells Fargo alleged that

in the 2013 Foreclosure Action, Lansing breached the contract by opposing the foreclosure on the Property, filing an answer to Wells Fargo's complaint, opposing Wells Fargo's motion for summary judgment, and appealing the judgment of the district court to the Minnesota Court of Appeals. Id., ¶ 15.  Lansing further breached the contract when he filed a Complaint in the instant matter, and by objecting to Wells Fargo's re-foreclosure on the Property. Id., ¶ 16.

By way of relief, Wells Fargo requested that this Court issue an Order dismissing Lansing's Complaint on the merits with prejudice, enforcing Wells Fargo's prior settlement agreement with Lansing, quieting title to the Property in Wells Fargo's name, and awarding damages to Wells Fargo in excess of $50,000. Id., p. 12.

### C. Wells Fargo's Motion for Judgment on the Pleadings

On October 22, 2015, Wells Fargo moved for an order dismissing Lansing's Complaint pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.  [Docket No. 9].

In support of its motion, Wells Fargo argued that Lansing's claims were barred by the doctrine of res judicata, as all four requirements of res judicata had been satisfied. Defendant Wells Fargo Bank's Memorandum of Law in Support of Its Motion for Judgment on the Pleadings ("Def.'s Mem."), pp. 6-11 [Docket No. 11].  Specifically, Wells Fargo submitted that the instant case concerns the same set of factual consequences as the 2013 Foreclosure Action because both cases involve the same piece of property and the same foreclosure proceeding. Id., pp. 7-8.  Although it is not clear whether Lansing raised his purported loan modification application as a defense in the 2013 Foreclosure Action, what matters is that he could have and should have done

11

so.  Id., p. 8 (citing Otis v. Burkholder, Civ. No. 10-2155 (JNE/JJK), 2011 WL 1990212, at *2 (D. Minn., Apr. 5, 2011); St. Paul Fire & Marine Ins. Co. v. Compaq Computer Corp., 539 F.3d 809, 821 (8th Cir. 2008); Mousel v. Knutson Mortg. Corp., 823 F. Supp. 658, 663 (D. Minn. 1993)).  According to Wells Fargo, Lansing had ample opportunity to raise his purported loan modification application to the state district court, and in fact, he did raise it on appeal.  Id., p. 9.

Additionally, Wells Fargo contended that this case concerned the same parties as the 2013 Foreclosure Action, and the prior action resulted in a final judgment on the merits.  Id., pp. 9-10.

As to the final element of res judicata, Wells Fargo asserted that Lansing had a full and fair opportunity to litigate the validity of the foreclosure on the Property.  Id., pp. 10-11.  Wells Fargo noted that despite his agreement not to challenge a second foreclosure, Lansing contested the 2013 Foreclosure Action by participating in discovery and the summary judgment motion, and then exercised his opportunity to appeal the district court's judgment to the Minnesota Court of Appeals.  Id.

Wells Fargo also moved for judgment on the pleadings on its counterclaim for breach of contract.  Wells Fargo argued that in the 2011 Foreclosure Action, Lansing entered into a binding settlement agreement with Wells Fargo in which he agreed not to contest a future foreclosure on the Property.  Id., pp. 11-12.  According to Wells Fargo, Lansing expressly acknowledged on the record that the oral terms of the settlement were binding and enforceable without being reduced to writing.  Id., p. 12.  However, Lansing breached the terms of the settlement agreement by contesting the 2013 Foreclosure Action, and again by initiating the instant lawsuit.  Id.

In response to Wells Fargo's motion, Lansing argued that although Magistrate Judge Boylan had ordered the parties to submit drafts of a written memorialization of the settlement agreement to him if there were disputes, the parties never did so. Plaintiff Scott Lansing's Memorandum of Law in Opposition to Defendant's Motion for Judgment on the Pleadings ("Pl.'s Mem."), p. 4 [Docket No. 21].   As such, Lansing claimed that the parties never came to a settlement agreement. Id. (citing Lansing Aff., Ex. 18 (Letter from Scott Lansing to Jonathan Drewes dated April 1, 2014)).

Lansing also argued that Wells Fargo had an obligation to comply with Minn. Stat. § 582.043 throughout the entire foreclosure process, and that he had no obligation to preemptively object to what Wells Fargo might do in the future (i.e., conduct a sheriff's sale).[4]  Id., p. 7.   Rather, Wells Fargo had to comply with the law even if he raised the issue of his loan modification request prior to the foreclosure sale.  Id., p. 8. Lansing urged that emails sent from his attorney to Wells Fargo demonstrated that he had the right to be reviewed for a loan modification and that Wells Fargo "has shown nothing but bad faith as well as being guilty of black listing."  Id., pp. 8-9 (citing Lansing Aff., Ex. 1 (email from Jonathan Drewes to David Mortensen dated November 22, 2013); Ex. 2 (letter from Wells Fargo to Lansing dated June 24, 2014); Ex. 15 (Affidavit of David R. Mortensen submitted in 2013 Foreclosure Action); Ex. 17; Ex. 19 (email chain between David Mortensen and Jonathan Drewes dated November 22, 2013)).

Finally, Lansing submitted that Wells Fargo could not assert the doctrine of res judicata because he had not had a full and fair opportunity to litigate the matter and the

---

[4]     Lansing asserted that Wells Fargo ignored his numerous requests for a loan modification after denying his first loan modification request on April 26, 2010. Pl.'s Mem., pp. 4-7.

parties never agreed on the terms of the earlier settlement agreement.  Id., p. 9.  In addition, the prior foreclosure action did not involve the same set of factual circumstances as the instant case because, in the previous litigation, the sheriff's sale had not yet taken place at the time Wells Fargo sought a monetary judgment.  Id.

In reply, Wells Fargo contended that Lansing's response focused only on the first requirement of res judicata.  Defendant Wells Fargo Bank's Reply Memorandum of Law in Support of its Motion for Judgment on the Pleadings, p. 2 [Docket No. 24].  With regard to Lansing's allegation that he submitted a loan modification request on September 3, 2014, Wells Fargo contended that Lansing's Complaint was based solely on his alleged submission of a loan modification request on November 21, 2013.  Id. Thus, because the claims in Lansing's Complaint were based entirely on the factual circumstances surrounding the 2013 Foreclosure Action, they are barred under res judicata.  Id., pp. 2-3.

Further, even if Lansing had pled in his Complaint that he had submitted a loan modification application to Wells Fargo on September 3, 2014, and that Wells Fargo had violated Minn. Stat. § 582.043 by proceeding forward with the sheriff's sale, his claim still failed as matter of law because he admitted that Wells Fargo received the loan modification documents only four business days before the sheriff's sale, rather than the seven business days required under the statute.  Id., pp. 3-5 (citing Minn. Stat. § 582.043, subd. 6(c)).  In addition, there is no independent right requiring that Lansing be reviewed for a loan modification—the only relief permitted under Minn. Stat. § 582.043 is to enjoin or set aside a foreclosure sale.  Id., p. 5.  The statute explicitly states that it does not impose any duty on a mortgage loan servicer to provide a loan

modification.  Id. (citing Minn. Stat. § 582.043, subd. 2; Stark v. Bank of America, N.A., Civ. No. 14-2931 (ADM/FLN), 2015 WL 756938, at *4 (D. Minn. Feb. 23, 2015)).

As for Lansing's argument that there was no binding settlement agreement in the 2011 Foreclosure Action because the agreement was never put in writing, Wells Fargo contended that a settlement does not have to be in writing to be enforceable, and Lansing had acknowledged on the record that the settlement agreement was final and fully enforceable even in the absence of signatures.  Id., pp. 5-6.  Wells Fargo represented that it had fully complied with the terms of the settlement by rescinding the 2011 foreclosure and by bringing a second foreclosure by judicial action in 2013.  Id., p. 6.  Lansing, however, breached the settlement by filing an Answer and contesting the 2013 Foreclosure Action, by filing the instant lawsuit, and by not vacating the Property at the end of the redemption period.  Id., pp. 6-7.

On December 21, 2015, the Court held a hearing on Wells Fargo's motion for judgment on the pleadings.  Lansing appeared via telephone.  However, it was very difficult to hear or understand Lansing's arguments and responses.  At the conclusion of the hearing, the Court asked Lansing whether he had been reading his arguments from a script, and Lansing said that he had.  The Court requested that Lansing produce his written script to the Court and Wells Fargo.  Lansing agreed and sent the transcript to both the Court and Wells Fargo.  See Docket No. 28 (letter from Scott Lansing to Hon. Janie S. Mayeron dated December 22, 2015).

At the hearing, Lansing argued that Wells Fargo had violated the National Mortgage Settlement Servicing Standards.  Id., p. 2.  Lansing did not specifically state how Wells Fargo violated the National Mortgage Settlement Servicing Standards, but he

alleged that Wells Fargo failed to provide "a single point of contact for the borrower" and that Wells Fargo did not "acknowledge receiving modification documents within three days." Id.  Additionally, Lansing contended that Wells Fargo had breached the terms of the "agreed upon Memorialization of Settlement" by denying his loan modification attempts in bad faith and by "blacklisting" him.  Id.  At the hearing, Lansing also informed the Court that he intended to move to amend his Complaint.

### D.    Lansing's Proposed Amended Complaint

On December 31, 2015, Lansing moved the Court for an Order granting leave to amend his Complaint pursuant to Rule 15 of the Federal Rules of Civil Procedure [Docket No. 29].

In his proposed Amended Complaint, Lansing alleged that on April 8, 2013, he and Wells Fargo reached a settlement and exchanged Memorialization of Settlement documents.  Motion to Amend Complaint, Ex. 1 (Proposed Amended Complaint), ¶ 37 [Docket No. 29] (citing Lansing Aff., Exs. 17, 20).[5]  The Memorialization of Settlement

---

[5]     Lansing claims that Exhibit 17 was written by Jonathan Drewes and Exhibit 20 by Wells Fargo.  A comparison of the two exhibits reveals that Exhibit 17 was written after Exhibit 20.  For example, Exhibit 17 incorporates language proposed by the redlining set forth in Exhibit 20.  Notably, section 2, ¶¶ 4-6 of both drafts contain the same language regarding Lansing's rights with respect to the foreclosure of his property:

> 4.  Lansing will not needlessly frustrate a future foreclosure. Specifically, he will not dodge service of process or complain as to technical violations of state foreclosure law.  Nothing in this paragraph shall prevent Lansing from recording a borrower's affidavit of postponement pursuant to state law in order to postpone the noticed sale, from asserting his state law rights of reinstatement or redemption, from continuing to try to modify the underlying indebtedness with Wells Fargo, from bankruptcy relief, or from holding Wells Fargo to the terms of the Mortgage.

documents stated that Lansing waived the right to contest technical defects in a future foreclosure action and that he retained the right to attempt to modify the underlying indebtedness with Wells Fargo.  Id., ¶¶ 38, 39.  Wells Fargo has repeatedly misstated, and has never accurately stated, the terms of the April 8, 2013 settlement agreement. Id., ¶¶ 40, 41.

On September 3, 2014, Wells Fargo received a loan modification request from Lansing via FedEx.  Id., ¶ 43.  Wells Fargo did not respond to the modification request and instead conducted a sheriff's sale on the Property on September 10, 2014.  Id., ¶ 44.  Wells Fargo sent Lansing a letter dated September 22, 2014, in which Wells Fargo indicated that it had received a loan modification request and that Lansing should call to discuss a loan modification.  Id., ¶ 45 (citing Lansing Aff., Ex. 4).  Lansing called Wells Fargo as requested, but Wells Fargo refused to discuss the contents of the letter.  Id., ¶ 46.

Wells Fargo sent Lansing another letter dated September 22, 2014.  Id., ¶ 47 (citing Lansing Aff., Ex. 5).  In the letter, Wells Fargo acknowledged receiving a loan modification request and asked Lansing to contact Wells Fargo by telephone to further discuss a modification.  Id.  Lansing called Wells Fargo, but Wells Fargo employees

---

5.  If the future foreclosure proceeds through sale, and Lansing does not exercise his right of redemption, he agrees to vacate the property cooperatively no later than the date of expiration of the redemption period.  If he fails to do so, Lansing hereby acknowledges that Wells Fargo, or its successors and assigns, may seek enforcement of this Agreement.

6.  Lansing waives all right to contest any technical defects of a future foreclosure of the Mortgage or any eviction proceeding brought by Wells Fargo, or its successors and assigns, should Lansing fair to vacate the Property in a timely manner as described herein.

refused to discuss the details of the letter and repeatedly transferred Lansing to other employees who also refused to discuss the letter.  Id., ¶ 48.

Wells Fargo sent Lansing a letter dated October 9, 2014, which again stated that Wells Fargo had received loan modification documents and that Lansing should call to discuss loan modification options.  Id., ¶ 49 (citing Lansing Aff., Ex. 3).  Lansing called Wells Fargo and recited the contents of the letter to Wells Fargo employees.  Id., ¶ 50.  The employees refused to discuss the issues contained in the letter and repeatedly transferred Lansing to other employees.  Id.  Lansing was never able to discuss any of the issues contained in the October 9, 2014 letter.  Id.

Lansing alleged that he made modification requests in February, 2010; October 8, 2010; August, 2012; November 21, 2013; and August 31, 2014.  Id., ¶ 53 (citing Exs. 4-9).  None of these requests was acted on in good faith by Wells Fargo.  Id.  Lansing claimed that Wells Fargo violated the terms of the April 8, 2013 settlement agreement by its blacklisting and bad faith actions regarding Lansing's "right under the settlement agreement" to seek modification of the Mortgage.  Id., ¶¶ 51, 52.  For relief, Lansing sought compensatory and punitive damages.  Id., ¶ 54; p. 10.

In support of his motion to amend, Lansing argued that his proposed claim for breach of contract was not futile because the Memorialization of Settlement documents clearly stated that he had the right to contest all non-technical defects of the foreclosure; these documents gave the parties the right to sue each other for violating the terms of the settlement agreement; and these documents gave him the right to attempt to modify his indebtedness to Wells Fargo.  Memorandum in Support of Motion to Amend Complaint, p. 3 [Docket No. 30] (citing Lansing Aff., Exs. 17, 20).  Further, Lansing

asserted that Wells Fargo's bad faith and blacklisting were evidenced by its repeated violations of Minnesota foreclosure statutes, the Federal National Mortgage Settlement, and the terms of the settlement agreement between the parties.  Id.

Lansing also submitted that his claim for punitive damages was meritorious because Wells Fargo demonstrated an "abiding indifference" to Lansing's property rights and repeatedly ignored any evidence that it was violating Minnesota foreclosure statutes.  Id., p. 5.   Further, Wells Fargo recklessly disregarded the settlement agreement between the parties and misrepresented the actual terms of the agreement. Id. (citing Lansing Aff., Exs. 17, 20).   As such, Lansing maintained that punitive damages were necessary to ensure that Wells Fargo "and others similarly situated conduct themselves with more respect for the rights of others in the future."  Id., p. 6.

In response, Wells Fargo contended that Lansing's proposed claim for breach of contract is futile, as it is premised on a purported breach of a provision in the settlement agreement that was never agreed upon or executed by either party.   Defendant Wells Fargo Bank's Memorandum of Law in Response to Plaintiff's Motion to Amend, pp. 4-5 [Docket No. 33].  In the 2011 Foreclosure Action, the parties did not contemplate, nor did the settlement agreement include, a provision regarding Lansing's ability to apply for a loan modification in the future.  Id., p. 5.   Rather, the "essential terms" of the settlement were stated on the record before Magistrate Judge Boylan, and any additional terms—including any term that Lansing could continue to try to modify the underlying indebtedness with Wells Fargo—were merely ancillary and never became part of the agreement.  Id., pp. 5-6.

Wells Fargo further argued that Lansing's proposed breach of contract claim failed as a matter of law because Wells Fargo did not breach any provision of the settlement agreement.  Id., p. 6.  Wells Fargo noted that the alleged "breach" arose out of a loan modification request purportedly submitted to Wells Fargo on September 3, 2014.  Id.  However, because Lansing submitted his application only five business days before the scheduled sheriff's sale, instead of the seven business days required under Minn. Stat. § 582.043, subd. 6(c), Wells Fargo was not obligated to halt the sheriff's sale.  Id.

Lastly, Wells Fargo submitted that Lansing's proposed claim for punitive damages should be denied, as Lansing had not demonstrated that he was entitled to actual or compensatory relief against Wells Fargo, nor had he shown that Wells Fargo's alleged actions were committed with deliberate disregard for the rights and safety of others.  Id., p. 7.

Lansing replied that the parties contemplated that he could apply for a loan modification, as set forth in the Memorialization of Settlement documents and in email communications from Lansing's counsel to Wells Fargo's counsel.  Plaintiff's Response to Defendant's Response to Plaintiff's Motion to Amend, p. 2 [Docket No. 36] (citing Lansing Aff., Exs. 1, 17, 20).  Lansing disagreed with Wells Fargo's contention that the Memorialization of Settlement documents were "merely ancillary."  Id., p. 3.  Lansing urged that both parties' versions settlement had identical language, and therefore, "[t]here is absolutely no doubt what the parties agreed to despite the fact that Wells Fargo now wants to misrepresent what the parties agreed to as a result of a settlement conference on April 8, 2013."  Id.

## II.    DISCUSSION

### A.    <u>Standard of Review</u>

"Judgment on the pleadings is appropriate where no material issue of fact remains to be resolved and the movant is entitled to judgment as a matter of law." <u>Minch Family LLLP v. Buffalo-Red River Watershed Dist.</u>, 628 F.3d 960, 965 (8th Cir. 2010) (quoting <u>Faibisch v. Univ. of Minn.</u>, 304 F.3d 797, 803 (8th Cir. 2002)).  A Rule 12(c) motion is reviewed under the same standard as a Rule 12(b)(6) motion to dismiss. <u>Greenman v. Jessen</u>, 787 F.3d 882, 887 (8th Cir. 2015*)*.  In considering a motion for judgment on the pleadings, "'we must take the well-pleaded allegations of the complaint as true, and construe the complaint, and all reasonable inferences arising therefrom, most favorably to the pleader.'"  <u>Arent v. Distribution Scis., Inc.</u>, 975 F.2d 1370, 1372 (8th Cir. 1992) (quoting <u>Morton v. Becker</u>, 793 F.2d 185, 187 (8th Cir. 1986)).  "The complaint is construed liberally, all factual allegations taken as true, but 'conclusory or catch-all assertions of law and unwarranted inferences' are rejected."  <u>Rand-Heart of New York, Inc. v. Dolan</u>, 812 F.3d 1172, 1176 (8th Cir. 2016) (citing <u>In re K-tel Int'l, Inc. Sec. Litig.</u>, 300 F.3d 881, 888 (8th Cir. 2002)).  In considering a motion for judgment on the pleadings, the Court may consider the pleadings, materials embraced by the pleadings, and public records.  <u>Id.</u> (citation omitted).

A motion for judgment on the pleadings must be converted to a motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure if "'matters outside the pleadings are presented to and not excluded by the court.'"  <u>Sorace v. United States</u>, 788 F.3d 758, 767 (8th Cir. 2015) (citing Fed. R. Civ. P. 12(d)). However, "'Rule 12(b)(6) motions are not automatically converted into motions for summary judgment simply because one party submits additional matters in support of or

[in] opposition to the motion.'" Gorog v. Best Buy Co., 760 F.3d 787, 791 (8th Cir. 2014) (quoting Casazza v. Kiser, 313 F.3d 414, 417 (8th Cir.2002)).  For example, "'[a] district court does not convert a motion to dismiss into a motion for summary judgment when, for example, it does not rely upon matters outside the pleadings in granting the motion.'" Sorace, 788 F.3d at 767 (quoting Gorog, 760 F.3d at 791 (8th Cir. 2014)).

In this case, Wells Fargo attached several exhibits to its Answer and Counterclaim.  Almost all of these exhibits are public records such as the Note, Mortgage, and various documents filed in connection with the prior foreclosure actions in 2011 and 2013.  See Answer and Counterclaim, Exs. A-C, E-M.  These materials, with the exception of Exhibit D (Wells Fargo's notes regarding Lansing's loan account), may be considered by the Court without converting the instant motion into one for summary judgment.

On the other hand, Lansing submitted numerous exhibits that were not attached to or described in his Complaint.  Most of these exhibits are non-public communications or news articles that are not relevant to this litigation.  See Docket Nos. 22, 26.  To the extent that it has considered them in connection with Wells Fargo's motion, the Court applies the standard for summary judgment.

Summary judgment is proper if, drawing all reasonable inferences favorable to the non-moving party, there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); see also Unigroup, Inc. v. O'Rourke Storage & Transfer Co., 980 F.2d 1217, 1219 (8th Cir. 1999).

The party moving for summary judgment bears the burden of showing that the material facts in the case are undisputed.  Celotex Corp., 477 U.S. at 322-23; see also Mems v. City of St. Paul, Dep't of Fire & Safety Servs., 224 F.3d 735, 738 (8th Cir. 2000).  If the moving party has carried its burden, the non-moving party must demonstrate the existence of specific facts in the record that create a genuine issue for trial.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986); Krenik v. County of LeSueur, 47 F.3d 953, 957 (8th Cir. 1995).  "The nonmoving party may not rest on mere allegations or denials, but must show through the presentation of admissible evidence that specific facts exist creating a genuine issue for trial."  Minnesota Laborers Health & Welfare Fund v. Swenke, 2003 WL 21521755 *1 (D. Minn. July 2, 2003) (citations omitted).  The non-moving party "must substantiate his allegations with sufficient probative evidence that would permit a finding in [their] favor based on more than mere speculation, conjecture, or fantasy."  Wilson v. Int'l Bus. Mach. Corp., 62 F.3d 237, 241 (8th Cir. 1995).

### B.  Res Judicata

"Under Minnesota law, the disposition of an earlier claim constitutes a res judicata bar against the litigation of a subsequent claim where '(1) the earlier claim involved the same set of factual circumstances; (2) the earlier claim involved the same parties or their privies; (3) there was a final judgment on the merits; [and] (4) the estopped party had a full and fair opportunity to litigate the matter.'"  Laase v. Cty. of Isanti, 638 F.3d 853, 856 (8th Cir. 2011) (citing Hauschildt v. Beckingham, 686 N.W.2d 829, 840 (Minn. 2004)).

"Where a plaintiff's claims come to a final judgment, that judgment 'constitutes an absolute bar to a second suit for the same cause of action, and is conclusive

between parties and privi[ ]es, not only as to every matter which was actually litigated, but also as to every matter which might have been litigated, therein.'" Id. at 857 (alteration in original) (emphasis added).

Based on the above legal principles, the Court concludes that Lansing's challenge to Wells Fargo's foreclosure on the Property in the instant suit is barred because all four elements of res judicata have been satisfied.

As an initial matter, Lansing did not dispute that the 2013 Foreclosure Action resulted in a final judgment on the merits, or that it involved the same parties as the present case. Indeed, in the 2013 Foreclosure Action, both Lansing and Wells Fargo were parties to the lawsuit, and the Hennepin County District Court ultimately granted summary judgment in favor of Wells Fargo. Lansing appealed the district court's decision, and the Minnesota Court of Appeals affirmed. Accordingly, the second and third elements of res judicata clearly have been met.[6]

Turning to the first element, the Court finds that the factual circumstances at issue in the 2013 Foreclosure Action were the same as in the instant case. In the prior action, Wells Fargo sought to foreclose on the Property based on Lansing's failure to make scheduled payments under the terms of the Note and Mortgage, and Lansing contested the foreclosure. In this case, Lansing has sought to challenge the same foreclosure on the same Property that was at issue in the 2013 Foreclosure Action.

---

[6]     The 2013 Foreclosure Action also included as defendants John Doe and Mary Roe who, according to Wells Fargo, "may have or claim an interest in the Property, which interest, if any, is junior and subordinate to the interest of [Wells Fargo] and the Mortgage." Counterclaim, Ex. H, ¶ 13. The inclusion of these additional defendants has no bearing on the Court's analysis.

Although it does not appear that Lansing asserted at the trial court level any claim or defense under Minn. Stat. § 582.043 in the 2013 Foreclosure Action,[7] the critical fact is that he could have done so based on his alleged submission of an application for modification on November 21, 2013.  Res judicata applies to "'all claims that could have been litigated in the earlier action in addition to those claims that actually were litigated.'" Scheffler v. Minnesota Dep't of Human Servs., 806 F.3d 448, 450 (8th Cir. 2015) (quoting St. Paul Fire & Marine Ins. Co., 539 F.3d at 821); Ashanti v. City of Golden Valley, 666 F.3d 1148, 1152 (8th Cir. 2012) (same) (quoting Brown-Wilbert, Inc. v. Copeland Buhl & Co., 732 N.W.2d 209, 220 (Minn. 2007)).  "[W]hether two claims are the same for res judicata purposes depends on whether the claims arise out of the same nucleus of operative fact or are based upon the same factual predicate." Murphy v. Jones, 877 F.2d 682, 684-85 (8th Cir. 1989) (citations omitted).  Thus, two claims cannot be considered the same cause of action if the right to assert the second claim did not arise at the same time as the right to assert the first claim.  Hauschildt, 686 N.W.2d at 841 (citing Care Inst., Inc.-Roseville v. Cty. of Ramsey, 612 N.W.2d 443, 447 (Minn. 2000)).

In this case, Wells Fargo's right to foreclose on the Property and Lansing's right to challenge the foreclosure on the Property arose out of the same factual predicates (i.e., Lansing's failure to make payments under the Note and Mortgage).  Indeed, Wells Fargo's initiation of the 2013 Foreclosure Action on the Property following the settlement of the 2011 Foreclosure Action created Lansing's alleged cause of action

---

[7]     The Minnesota Court of Appeals indicated that Lansing did not raise any claim under Minn. Stat. § 582.043 in the Hennepin County District Court.  See Counterclaim, Ex. M, p. 6.

under Minn. Stat. § 582.043.  For these reasons, the Court concludes that the factual circumstances underlying the 2013 Foreclosure Action were the same as in the instant case.  Accordingly, the first element of res judicata has been satisfied.

In his effort to defeat Wells Fargo's motion, Lansing asserted that on September 3, 2014, Wells Fargo received 27 pages of loan modifications documents.  Pl.'s Mem., p. 6 (citing Lansing Aff., Ex. 9).  Based on that allegation, Lansing argued that under Minn. Stat. § 582.043, subd. 3, Wells Fargo was required to postpone the sheriff's sale scheduled for September 10, 2014, until his loan modification application had been processed.  Pl.'s Mem., p. 7.  The Court finds otherwise.

First, Lansing's allegation that he submitted a loan modification application on September 3, 2014, was not pled in his Complaint and is not properly before the Court on a motion for judgment on the pleadings.  Porous Media Corp. v. Pall Corp., 186 F.3d 1077, 1079 (8th Cir. 1999) ("When considering a motion for judgment on the pleadings (or a motion to dismiss under Fed.R.Civ.P. 12(b)(6)), the court generally must ignore materials outside the pleadings . . . .").  Second, even if Wells Fargo did receive Lansing's loan modification application on September 3, 2014, Lansing's claim is futile because his request for a loan modification was untimely and did not trigger the protections of Minn. Stat. § 582.043.

Minn. Stat. § 582.043, subd. 3, provides that "[a] [loan] servicer shall not conduct a foreclosure sale unless the servicer has complied with subdivisions 5, 6, and 7, if applicable."

> If the servicer receives a loss mitigation application after the foreclosure sale has been scheduled, but before midnight of the seventh business day prior to the foreclosure sale date, the servicer must halt the foreclosure sale and evaluate the

> application. If required to halt the foreclosure sale and
> evaluate the application, the servicer must not move for an
> order of foreclosure, seek a foreclosure judgment, or
> conduct a foreclosure sale unless [certain conditions are
> met].

Minn. Stat. § 582.043, subd. 6(c) (emphasis added).

In this case, Lansing submitted his loan modification application to Wells Fargo on September 3, 2014, less than seven <u>business days</u> prior to the foreclosure sale on September 10, 2014.  As such, the protections of Minn. Stat. § 582.043, subd. 6(c) did not apply, and Wells Fargo was not required to halt the foreclosure sale to evaluate Lansing's untimely application.

With respect to the fourth element of res judicata, Lansing urged that he "has not had a full and fair opportunity to litigate the matter."  Pl.'s Mem., p. 9.  However, Lansing offered no facts or explanation as to how he was deprived of a sufficient opportunity to present his claims or defenses in the 2013 Foreclosure Action.

To the contrary, the undisputed facts are that while Lansing's counsel withdrew shortly before the hearing on Wells Fargo's motion for summary judgment, there is nothing in the record before this Court that suggests that Lansing's full and fair opportunity to litigate the 2013 Foreclosure Action was diminished by his pro se status. Indeed, "Minnesota courts consistently hold pro se litigants to the same rules and standards as licensed attorneys."  Peet v. Associated Bank, N.A. Mendota Heights, Civil No. 11–2544 (SRN/JJG), 2013 WL 717349, at *4 (D. Minn. Feb. 27, 2013) (citing Davis v. Danielson, 558 N.W.2d 286, 287 (Minn. Ct. App. 1997)); see also Franklin Auto Body Co. v. Wicker, 414 N.W.2d 509, 512 (Minn. Ct. App. 1987) ("While all courts provide some latitude and consideration to persons appearing pro se, this court cannot permit

the bending of rules and requirements.") (citing <u>Liptak v. State, ex rel. City of New Hope</u>, 340 N.W.2d 366, 367 (Minn. Ct. App. 1983)).

Moreover, the record shows that Lansing did assert a claim under Minn. Stat. § 582.043 in the 2013 Foreclosure Action on appeal, and the Minnesota Court of Appeals rejected it on the merits. Counterclaim, Ex. M., pp. 6-7.

In sum, the Court concludes that all four elements of res judicata have been met, and therefore, Lansing is barred from asserting any challenges to Wells Fargo's foreclosure on the Property.

### C. <u>Wells Fargo's Counterclaim for Breach of Contract</u>

The Court finds that Wells Fargo is entitled to relief on its counterclaim for breach of contract. In the 2011 Foreclosure Action, the parties attended a settlement conference and reached a settlement agreement on April 8, 2013. A hearing was held before Magistrate Judge Boylan, at which counsel for Wells Fargo recited the terms of the settlement agreement on the record:

> MS. HOFFMAN: The parties agree that in exchange for a dismissal of all Mr. Lansing's claims in the complaint by stipulation the parties will rescind the current foreclosure sale; discharge a notice of lis pendens that's currently before, also recorded; reinstate the previously existing mortgage allowing Wells Fargo to proceed with re-foreclosure.
>
> <u>Mr. Lansing will cooperate with that re-foreclosure process</u>, but nothing in the agreement will prevent him from doing a borrower postponement affidavit. <u>He will waive the right to challenge any deficiencies in the future foreclosure</u>, and he will vacate the property at the expiration of the redemption period, also releasing any claims against Wells Fargo for any future eviction that it might have to do notwithstanding the fact that he has agreed to vacate the property at the expiration of the redemption period. . . .

Counterclaim, Ex. G, pp. 2-3 (emphasis added).   With the exception of an attorney's fees provision, Lansing's counsel did not correct, clarify or object to the terms of the settlement agreement as stated by Wells Fargo.   Id., pp. 3-4.

The following colloquy then took place in which Lansing unequivocally stated that he understood he was entering into a final and fully enforceable settlement:

> THE COURT:        Mr. Lansing, can I have you take the podium for one moment, please.  Mr. Lansing, you've been seated here and you've what was said; am I correct?
>
> MR. LANSING:       Yes.
>
> THE COURT:        Did you hear everything?
>
> MR. LANSING:       Yes.
>
> THE COURT:        Did you understand everything?
>
> MR. LANSING:       Yes.
>
> THE COURT:        Is this agreeable to you?
>
> MR. LANSING:       Yes.
>
> THE COURT:        You understand this is a final and fully enforceable settlement even in the absence of signatures?
>
> MR. LANSING:       Yes.

Id., pp. 4-5.

Following this exchange, Justin Krauss, in-house counsel for Wells Fargo, stated on the record that Wells Fargo agreed to the terms of the settlement agreement.  Id., p. 5.   Krauss further agreed that the settlement was fully enforceable, even in the absence of signatures.  Id.

Based on the recorded statements of the parties at the hearing before Chief Magistrate Judge Boylan, this Court concludes that Lansing and Wells Fargo entered into a fully enforceable settlement agreement at the hearing on April 8, 2013.  The terms

of the settlement agreement were clearly stated on the record by Wells Fargo's counsel and confirmed by Lansing's counsel, and then critically, were agreed to by both Lansing and Wells Fargo's representative.   The fact that the agreement reached on the record was never memorialized in writing, as contemplated by the parties and Magistrate Judge Boylan, is irrelevant to this determination.   Both parties agreed that the settlement was fully enforceable even in the absence of signatures.   See Asbestos Products, Inc. v. Healy Mech. Contractors, Inc., 235 N.W.2d 807, 809 (Minn. 1975) ("But where the parties have assented to all the essential terms of the contract and proceed to perform in reliance upon it, the mere reference to a future contract in writing will not negative the existence of the present, binding contract.") (citing Lamoreaux v. Weisman, 161 N.W. 504, 505 (Minn. 1917)); Riley Bros. Constr. v. Shuck, 704 N.W.2d 197, 203 (Minn. Ct. App. 2005) ("While the parties could have agreed that a written agreement was a condition precedent to completion of a contract, there is no evidence to suggest that both parties agreed to such a course of conduct."); Restatement (Second) of Contracts § 27 (1981) ("Manifestations of assent that are in themselves sufficient to conclude a contract will not be prevented from so operating by the fact that the parties also manifest an intention to prepare and adopt a written memorial thereof;").

Lansing repeatedly argued that Wells Fargo has misrepresented the written terms of the settlement agreement as set forth in each party's version of the Memorialization of Settlement.   See Lansing Aff., Exs. 17, 20.   The Court rejects Lansing's contention for two reasons.   First, these exhibits cannot be considered in a motion brought under Rule 12(c) because they are not public documents, nor were they described in or attached to Lansing's Complaint.   See Sorace, 788 F.3d at 767.

Second, by considering these documents and converting this motion to a Rule 56 motion for summary judgment, they have no bearing on this Court's analysis as to whether Lansing breached the agreement with Wells Fargo reached at the settlement conference before Chief Magistrate Judge Boylan.  This is because there is no evidence that the parties signed or otherwise assented to either version of the Memorialization of Settlement, much less made their agreement on the record contingent upon and only enforceable upon execution of later written document.  In other words, Exhibits 17 and 20 are merely drafts that have no force of law.  Accordingly, the terms of the settlement agreement between the parties were the terms stated on the record at the settlement conference.  Under those terms, Lansing agreed to cooperate with the re-foreclosure process and waive the right to challenge any deficiencies in the future foreclosure.[8]

In summary, by opposing the judicial foreclosure on the Property in 2013 and filing an answer to Wells Fargo's complaint, by opposing Wells Fargo's motion for summary judgment, and by appealing the judgment of the district court to the Minnesota Court of Appeals, the Court finds that Lansing breached the settlement agreement reached on the record on April 8, 2013 in the 2011 Foreclosure Action.  Further, the Court concludes that Lansing breached the settlement agreement again when he filed a Complaint in the instant matter challenging the 2013 Foreclosure Action, and by objecting to Wells Fargo's judicial foreclosure of the Property on grounds that Wells

---

[8]     The language contained in the drafts of the Memorialization of Settlement does not dictate a different result.  Although both versions stated that Lansing retained the right to continue to try to modify the underlying indebtedness with Wells Fargo, they did not give him the right to assert that Wells Fargo violated state foreclosure law in the event that it did not act on any request for modification of the loan.  Indeed, both versions indicated that Lansing "will not needlessly frustrate a future foreclosure. Specifically, he will not dodge service of process or complain as to technical violations of state foreclosure law."  Lansing Aff., Ex. 17, p. 2; Ex. 20, p. 3.

Fargo failed to comply with Minn. Stat. § 582.043.  Wells Fargo is entitled to judgment on its counterclaim for breach of contract.

### D.   **Motion to Amend Complaint**

Under Rule 15 of the Federal Rules of Civil Procedure, a court should freely give leave to amend a pleading when justice so requires.  Fed. R. Civ. P. 15(a)(2).

> In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be 'freely given.'

Foman v. Davis, 371 U.S. 178, 182 (1962).  The decision to grant or deny leave to amend is within the discretion of the District Court.  Ash v. Anderson Merchandisers, LLC, 799 F.3d 957, 963 (8th Cir. 2015) (citation omitted).

In his proposed Amended Complaint, Lansing alleged that Wells Fargo received a loan modification request from Lansing on September 3, 2014.  Proposed Amended Complaint, ¶ 43.  According to Lansing, Wells Fargo did not respond to his modification request, but instead conducted a sheriff's sale on the Property on September 10, 2014.  Id., ¶ 44.  Consequently, Lansing alleged that Wells Fargo breached the terms of the 2013 settlement agreement between the parties as set forth in the Memorialization of Settlement documents, which provided that Lansing retained the right to attempt to modify the underlying indebtedness with Wells Fargo.  Id., ¶ 39.

The Court finds that Lansing should be not be given leave to amend his pleading to add a claim for breach of contract.  Lansing's theory of relief is based on an alleged breach of a term contained in the proposed Memorialization of Settlement documents.  However, neither version of this document was signed by the parties.  See Lansing Aff.,

Exs. 17, 20.  Thus, the term stating that Lansing had a right to try to modify his debt with Wells Fargo never became an enforceable part of the settlement agreement.  Rather, the actual terms of the settlement agreement were those stated on the record at the hearing before Magistrate Judge Boylan.  Under those terms, Lansing agreed to cooperate with re-foreclosure on the Property and to waive the right to challenge any deficiencies in the future foreclosure.  Neither party agreed that Lansing retained a right to try to modify his underlying debt with Wells Fargo.

Additionally, to the extent Lansing has based his breach of contract claim on grounds that Well Fargo violated Minn. Stat. § 582.043 when it proceeded with the foreclosure sale on September 10, 2014, despite the fact that Wells Fargo had received his loan modification request on September 3, 2014, that claim is futile.  As set forth above, Minn. Stat. § 582.043, subd. 6(c) requires that a loan servicer must halt a foreclosure sale if the servicer receives a loss mitigation application before midnight of the seventh business day prior to the schedule foreclosure sale.  Because Lansing submitted his loan modification application to Wells Fargo on September 3, 2014, less than seven business days prior to the foreclosure sale on September 10, 2014, there was no obligation for Wells Fargo to postpone the sheriff's sale to evaluate Lansing's application.

For these reasons, the Court finds that Lansing's claim for breach of contract is futile, and therefore, his motion for leave to amend his Complaint to add the claim, and the associated claim for punitive damages, should be denied.  See Moore-El v. Luebbers, 446 F.3d 890, 902 (8th Cir. 2006) ("[L]eave may be denied if it would be futile.") (citing Foman, 371 U.S. at 182).

## III.   RECOMMENDATION

For the reasons set forth above, and upon all of the files, records and proceedings herein, IT IS HEREBY RECOMMENDED that:

1.     Defendant Wells Fargo Bank's Motion for Judgment on the Pleadings [Docket No. 9] be **GRANTED**.

2.     Lansing's Complaint [Docket No. 1] be **DISMISSED WITH PREJUDICE**.

3.     Wells Fargo's Counterclaim for Breach of Contract [Docket No. 4] be **GRANTED**. This case will proceed forward to assess Wells Fargo's requests for relief associated with its counterclaim for breach of contract.

4.     Lansing's Motion to Amend Complaint [Docket No. 29] be **DENIED**.


Dated:        April 25, 2016

*s/ Janie S. Mayeron*
JANIE S. MAYERON
United States Magistrate Judge


## NOTICE

Under D. Minn. LR 72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties by **May 10, 2016**, a writing which specifically identifies those portions of this Report to which objections are made and the basis of those objections.  Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals.  A party may respond to the objecting party's brief within fourteen days after service thereof.  All briefs filed under this Rule shall be limited to 3500 words.  A judge shall make a de novo determination of those portions to which objection is made.   This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable to the Court of Appeals.